UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. GILES,<br><br>            Plaintiff,<br><br>    v.<br><br>SAN JOAQUIN VALLEY REHABILITATION HOSPITAL, et al.,<br><br>            Defendants. | Case No. 1:21-cv-00732-JLT-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM<br><br>(Doc. 21)<br><br>*30-day Deadline* |

Michael D. Giles, proceeding *pro se*, initiated this action against San Joaquin Valley Rehabilitation Hospital, its parent company Vibra Healthcare, LLC, Mary Jo Jacobson, Connie Pierce, and Kelly Rudolph by filing a complaint on May 6, 2021. (*See* Doc. 1.) According to Plaintiff, Defendants engaged in discriminatory and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1994 and the Age Discrimination in Employment Act. (*Id.* at ¶ 1.) Plaintiff seeks to hold Defendants liable for: (1) gender discrimination, retaliation, and hostile work environment in violation of Title VII; (2) age discrimination and hostile work environment in violation of the ADEA; and (3) conspiracy to deprive Plaintiff of gainful employment.[1] (*Id.* at ¶¶ 13a-23.) Defendants move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 21.) The Court finds the matter suitable for decision

---

[1] Plaintiff also alleges the Court has jurisdiction under the Equal Pay Act but asserts no causes of action under the Act. (*See* Doc. 1 at ¶ 1.) Thus, the assertion will not be further considered.

1

without oral argument pursuant to Local Rule 230(g). For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

## I.  Background and Allegations

Plaintiff worked as a maintenance engineer for San Joaquin Valley Rehabilitation Hospital up until his termination in 2019. (Doc. 1 at ¶ 4.) At the time he filed his complaint in federal court, Plaintiff alleges he was at least 60 years old. (*Id.* at ¶ 13a.) Plaintiff claims that during his employment he was mistreated by SJVRH's Director of Quality Improvement, Kelly Rudolph, who allegedly engaged in discriminatory and retaliatory behavior against Plaintiff. (*See id.* at ¶ 12a.) Plaintiff repeatedly complained about Rudolph's conduct to SJVRH's Human Resources Director, Connie Pierce, yet Plaintiff claims no investigation or disciplinary conduct was taken against Rudolph. (*See id.* at ¶ 10b.) According to Plaintiff, Rudolph's alleged mistreatment began after an incident with a heat pump. (*Id.* at ¶ 12a.) Plaintiff claims Rudolph asked a housekeeper to take apart a heat pump after water had spilled into it and shorted the electrical system. (*Id.*) Plaintiff saw this interaction and advised the housekeeper to "get away from the machine" or else risk being "seriously injured or dead." (*Id.*) Plaintiff asserts he reported this incident to his supervisor, and from that day forward Rudolph "had a problem with [him]." (*Id.*) Around February or March of that year, Plaintiff contends Rudolph's alleged hostility towards him increased and the "company started coming after [him] at that time." (*Id.* at ¶ 12b.) Plaintiff claims he was written up for having a conversation with another employee, and in one instance Rudolph allegedly made a disparaging remark to Plaintiff about him not being in uniform. (*Id.*)

Although it is unclear whether this occurred prior to or after the heat pump incident, Plaintiff also alleges that SJVRH lost a class action lawsuit and "promised the employees prompt payment." (Doc. 1 at ¶ 11a.) Plaintiff claims SJVRH hired a corporate officer to interview employees, including Plaintiff, to "find out why we stayed so long." (*Id.*) Of the five employees interviewed, Plaintiff asserts that three had been fired (including himself), one had voluntarily left, and one remained at the facility. (*Id.*) SJVRH allegedly suffered high employee turnover among its older employees resulting from its failure to pay its class action payments and for fostering an allegedly hostile workplace. (*See id.*)

2

Plaintiff further alleges that on August 2, 2019, he was "called into HR" and suspended for five days without explanation. (Doc. 1 at ¶ 12c.) According to Plaintiff, this incident caused him extreme mental anguish. (*See id.*) He spoke with Pierce and asked that Rudolph not be involved in any disciplinary action taken against him, but his request was ignored. (*Id.*) On August 7, 2019, Plaintiff was informed that his suspension stemmed from a comment he made to a female employee. (*Id.*) According to Plaintiff, his comment was taken out of context by Rudolph and Pierce to make it seem like he made a sexually harassing remark. (*See id.*) When Plaintiff tried to explain the miscommunication to Pierce, Plaintiff claims Pierce told him "[your] intentions don't matter only the perception of the person making the accusation." (*Id.*) On August 14th, 2019, Plaintiff was informed that there had been three other accusations filed against him by other employees. (*Id.*) Plaintiff contends that two of the complaints never happened and the third one "probably did as I talked to many employees and walked them to their cars (hundreds of times over the years)." (*Id.*) Plaintiff alleges these series of complaints against him were "for one purpose only, to remove me from my position at the hospital." (*Id.*) On December 10, 2019, SJVRH terminated Plaintiff's employment. (*Id.*)

The same day, Plaintiff filed for unemployment with the Employment Development Department. (Doc. 1 at ¶ 13a) He later learned that he was fired for cause and would not be eligible for unemployment. (*Id.*) This compelled Plaintiff to file a complaint with the U.S. Equal Employment Opportunity Commission and an appeal of his unemployment benefits denial. (*See id.*) On October 5 of that year, the EDD held a hearing, during which Plaintiff alleges that Pierce and SJVRH's CEO, Mary Jo Jacobson, "flat lied about their entire case against me." (*Id.*) Plaintiff asserts that Jacobson and Pierce made "illegal statements [] under oath" because Rudolph influenced their testimony. (*See id.*)  He alleges the existence of a conspiracy between the three individual defendants to "remove [him] from [his] position but deny [him] any way to provide for [his] family." (*Id.*)

On May 6, 2021, Plaintiff filed a complaint in federal court. (Doc. 1.) Defendants filed a motion to dismiss on July 1, 2021. (Doc. 7.) The Court granted in part the motion to dismiss for insufficient service of process and quashed service but did not address the remainder of the

3

1 arguments. (*See* Doc. 17.) On March 29, 2022, Defendants filed a second motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies for his Title VII and ADEA claims; was barred from suing the individual defendants under Title VII and the ADEA; and failed to state actionable claims for gender discrimination, age discrimination, retaliation, conspiracy, and hostile work environment. (*See* Doc. 21.) Plaintiff filed an opposition on April 26, 2022, (Doc. 23) to which Defendants replied on May 7, 2022. (Doc. 25.)

**II.    Legal Standard**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a recognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

///

///

### III. Discussion and Analysis

#### A. Individual Defendant Liability Under Title VII and the ADEA

In addition to asserting claims against SJVRH and Vibra, Plaintiff asserts Title VII and ADEA claims against Jacobson in her official capacity as CEO of SJVRH, Pierce in her official capacity as HR Director of SJVRH, and Rudolph in her official capacity as Director of Quality Improvement for SJVRH. (*See* Doc. 1 at ¶¶ 5-9, 14-17.)

Claims against employees in their official capacity merge into claims against the employer. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-Capacity suits. . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotation marks omitted). Claims against an individual in his or her official capacity have been regarded as "redundant" and "unnecessarily duplicative" of claims against the employer, so courts have determined it is appropriate for dismissal or summary adjudication of the claims. *See, e.g.*, *Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (affirming the court's dismissal of claims against an officer in where he was named in his official capacity and the entity was also a defendant); *Mock v. Cal. Dep't of Corr. & Rehab.*, 2015 WL 5604394, at *11 (E.D. Cal. Sept. 23, 2015) (where the Plaintiff raised claims against both the Secretary of CDCR and the CDCR, the court found the individual defendant – named in his official capacity – was "an 'improper target'" and dismissed the claims *sua sponte*). Because Plaintiff's claims against Jacobson, Rudolph, and Pierce in their official capacities duplicate claims against the employer SJVRH, the Court finds dismissal of these claims to be appropriate.

Plaintiff also asserts claims against Jacobson, Rudolph, and Pierce in their individual capacities. (*See* Doc. 1 at ¶¶ 7-9.) Title VII does not provide a cause of action for damages against supervisors or fellow employees in their individual capacities. *See Craig v. M&O Agencies*, Inc., 496 F.3d 1047, 1058 (9th Cir. 2007) (citing *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998)). Civil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee. *Pink*, 157 F.3d at 1189; *see also Miller v. Maxwell's Intern, Inc.*, 991 F.2d

5

583, 587 (9th Cir. 1993) ("Congress did not intend to impose individual liability on employees. . . If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.); *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982) ("42 U.S.C. s 2000e-2 speaks of unlawful practices by the employer, and not of unlawful practices by officers or employees of the employer."). The liability scheme under Title VII is applicable to suits under the ADEA as the statutory schemes are essentially the same in this aspect; they both limit civil liability to the employer. *See Miller*, 991 F.2d at 588. Thus, Plaintiff's Title VII and ADEA claims against Jacobson, Rudolph, and Pierce are **DISMISSED**.

### B. Exhaustion of Administrative Remedies

Defendants assert that Plaintiff failed to exhaust his administrative remedies by not providing a copy of the right-to-sue-letter in his complaint. (*See* Doc. 21 at 7-8.) Because Plaintiff failed to allege that he complied with the statutory prerequisites, Defendants contend that his Title VII and ADEA claims are time-barred and should be dismissed. (*Id.*)

The Ninth Circuit explained, "[u]nder Title VII, a plaintiff must exhaust [his] administrative remedies by filing a timely charge with the EEOC. . . thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Thus, a plaintiff must file an EEOC complaint within 180 days of the alleged violation, or "if. . . the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice." *See* 42 U.S.C. § 2000e-5(e); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). After receiving a right-to-sue letter from the EEOC, a plaintiff has 90 days to file a complaint in federal court. *See* 42 U.S.C. § 2000e-5(f)(1). A plaintiff "must allege compliance with [the administrative exhaustion] requirement. . . in order to state a claim on which relief may be granted." *Hallmon v. Stanislaus County Hum. Res. Dep't*, 2022 WL 1204705, at *4 (E.D. Cal. Apr. 22, 2022) (citing *Williams v. Wolf*, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019)); *see also Fort Bend City. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (noting that Title VII's "charge-filing requirement is a processing rule, albeit a mandatory one."). This includes alleging the receipt of a right-to-sue letter. *See Karim-*

*Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626-27 (9th Cir. 1988*); see also Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1212 (E.D. Cal. 2006) ("It is generally a plaintiff's burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint. . . and obtaining a right-to-sue letter."). The same administrative exhaustive requirement applies to ADEA claims. *See Whitsitt v. Hedy Holmes Staffing Servs.*, 2014 WL 5019667, at *5 (E.D. Cal. Oct. 7, 2014), report and recommendation adopted, 2014 WL 6901868 (E.D. Cal. Dec. 5, 2014). ("Failure to have substantially complied with the exhaustion requirement deprives this court of jurisdiction over the ADEA claim(s)."). A plaintiff may not file an ADEA claim until 60 days after the filing of an EEOC complaint. 29 U.S.C. § 626(d); 29 C.F.R. § 1626.7(a). This waiting period gives the EEOC the opportunity to decide if it will pursue the claim, terminating the plaintiff's private right of action. *See* 29 U.S.C. § 626(c)(1).

Even construing Plaintiff's complaint liberally, he does not sufficiently allege that he exhausted his administrative remedies with respect to his Title VII or ADEA claims. Plaintiff alleges that he filed a complaint with the EEOC, (*see* Doc. 1 at ¶ 13a) but this is insufficient. Plaintiff not only fails to generally allege he exhausted his administrative remedies or received a right-to-sue letter,[2] he does not allege when he filed an EEOC charge to determine whether the instant action is timely, nor does he provide any facts regarding the status of his EEOC complaint, including which charges he filed, whether any investigation occurred, and the results thereof. *See Hallmon*, 2022 WL 1204705, at *4. Because Plaintiff has not alleged sufficiently that he complied with the administrative exhaustion requirements, his Title VII and ADEA claims are not sufficiently pled. Accordingly, Defendants' motion to dismiss on this basis is **GRANTED** and these claims are **DISMISSED**.

### C. Plaintiff's Title VII and ADEA Claims

Because the Court has already determined Plaintiff fails to state a claim with respect to his Title VII and ADEA causes of action, it need not consider the remainder of Defendants' arguments pertaining to the merits of Plaintiff's claims. However, because Defendants raise

---

[2] In his opposition, Plaintiff confirmed he received a right-to-sue-letter in February 2021. (*See* Doc. 23 at 6.) The Court reiterates, however, that for purposes of a 12(b)(6) motion, a review of Plaintiff's charges is "limited to the complaint alone." *Cervantes*, 5 F.3d at 1274.

several meritorious arguments regarding the sufficiency of Plaintiff's allegations, and because the Court will grant Plaintiff leave to amend these causes of actions, the Court will briefly note any perceived deficiencies.

### i.     Title VII – Sex Based Discrimination

Title VII makes it unlawful "for an employer to discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this [title]. . ." 42 U.S.C. § 2000e-3(a). Furthermore, Title VII provides it is "an unlawful employment practice for an employer. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A plaintiff may show discrimination in violation of Title VII by proving disparate treatment or impact, or by establishing the existence of a hostile work environment. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), superseded by statute on other grounds as recognized by *Dominguez-Curry v. Nev. Trans. Dist.*, 424 F.3d 1027, 1041 (9th Cir. 2005).

An individual suffers disparate treatment in his employment "when he or she is singled out and treated less favorably than others similarly situated." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th 2004). "[T]o assert a valid Title VII claim for sex discrimination, a plaintiff must make out a prima facie case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1108-09 (9th Cir. 2006) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). A plaintiff must allege "(1) that [he] belongs to a protected class, (2) [he] was performing according to [his] employer's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees with qualifications similar to [his] own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citation omitted).

Plaintiff fails to allege that he was performing to his employer's legitimate expectations, providing no facts that would indicate a satisfactory job performance. In addition, Plaintiff must demonstrate that other similarly qualified employees were treated more favorably than him. *Godwin*, 150 F.3d at 1220. Plaintiff relies on the complaints lodged against him by a female employee to argue that female employee complaints are treated more seriously than male employee complaints. (*See* Doc. 1 at ¶ 12c.) However, this comparison misses the point, as the comparator individual must be similarly situated "in all material aspects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."). The female employee's complaint alleged sexual harassment by a co-worker, not general hostility by a supervisor, which is Plaintiff's basis for complaining. Thus, Plaintiff has not pled that similarly situated employees outside of his protected class were treated more favorably than him.

As to the alleged sex-based differences with on-call pay between the maintenance and shipping workers and the "Nursing Liaisons, and inpatient admitting" workers, Plaintiff fails to identify the gender make-up of each unit. This absence of substantive facts makes it unclear as to why Plaintiff considers this practice to be sex-based discrimination. Thus, Plaintiff fails to plead sufficient facts supporting a connection between the practice and his protected status.

        *ii.* *Title VII – Hostile Work Environment*

Title VII is also violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (citing *Harris*, 510 U.S. at 21). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminator changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). To state a hostile work environment based on sex, a plaintiff must sufficiently allege: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was

9

unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642.

Plaintiff takes great efforts to highlight the alleged hostile behavior Rudolph directed at him, yet absent are any facts indicating this alleged hostility was based on his gender. Under Title VII, Plaintiff must have been subject to "*discriminatory* intimidation, ridicule, and insult." *Oncale*, 523 U.S. at 78 (emphasis added). While the Court acknowledges and is sensitive to Plaintiff's perceived workplace abuse, not a single incident of alleged insults or actions taken by Rudolph are linked to Plaintiff's protected class.

### iii.   Title VII – Retaliation

It is a violation of Title VII if the employer retaliates against an employee for opposing conduct made unlawful by Title VII, or "if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)). To state a cognizable claim for retaliation, a plaintiff must allege: "(1) [he] engaged in an activity protected by Title VII; (2) [his] employer subjected [him] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Bleeker v. Vilsack*, 468 Fed. Appx. 731, 732 (9th Cir. 2012); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Plaintiff fails to plead that he engaged in protected opposition activity. In general, complaining to an employer regarding discrimination is a protected activity. *See Ray*, 217 F.3d at 1240. Plaintiff, however, fails to note whether his complaints to Pierce contained any allegations of sex-based discrimination or any other form of discrimination; he simply states that he "complained several times about [Rudolph's] hostile attitude toward me." (Doc. 1 at ¶ 12a.) As noted above, this alleged hostile behavior does not necessarily create an inference of sex-based discrimination. Without further information that Plaintiff's complaints to his employer referenced conduct "made unlawful [by Title VII]," the Court cannot conclude that Plaintiff engaged in protected opposition activity. *See Hashimoto*, 118 F.3d at 680.

Plaintiff does not provide a sufficient causal link between his alleged protected activity and resulting adverse employment action. Plaintiff offers no dates to indicate a time proximity

between his complaints and termination, instead noting that his problems with Rudolph stretched "over several years." (Doc. 1 at ¶ 12c.) This may or may not be a limiting factor in establishing causation. *Compare Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint), *and Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (inferring causation where adverse employment actions took place less than three months after the plaintiff's complaint), *with Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (finding that a year-and-a-half interval between the complaint and the employee's termination, standing alone, is too long to raise an inference of discrimination). Plaintiff has failed to plead sufficient facts that would support an inference of causation based on temporal proximity or any other basis.

       *iv.*  *ADEA – Age-Based Discrimination*

   The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). A plaintiff may also show violations of the ADEA by proving the existence of a hostile work environment. *Sischo-Nownejad*, 934 F.2d at 1109.

   To state a prima facie case of an ADEA violation, a plaintiff must allege he (1) belonged to the protected class; (2) was satisfactorily performing his job; (3) was terminated, rejected for employment, or subjected to another adverse employment action; and (4) "was replaced by a substantially younger employee with equal or inferior qualifications or some other circumstances that would lead to an inference of age discrimination." *Brazill v. Cal. Northstate Coll. of Pharm., LLC*, 904 F. Supp. 2d 1047, 1052 (E.D. Cal. 2012) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). A Plaintiff must also show that his age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves*, 530 U.S. at 141

(2000).

As noted above, Plaintiff fails to plead that he was performing his job satisfactorily. Additionally, Plaintiff's reference to two employees that were "brought in…to replace [him]" fails to establish that he was replaced by "substantially younger" employees as Plaintiff does not note the age nor the qualifications of those employees. *See Brazill*, 904 F. Supp. 2d at 1052. Neither are there facts indicating Plaintiff's age played a "determinative influence" in his termination. *Reeves*, 530 U.S. at 141. Plaintiff's only other support for age discrimination is an implication that SJVRH's alleged refusal to make payments from its class action lawsuit was discriminatory against older employees. First, Plaintiff never asserts he is part of this group of payment recipients, thus any discrimination on this basis is tenuous to his case. Second, Plaintiff's assertion of high turnover and failed payments is merely a conclusory statement, as Plaintiff offers no substantive evidence showing that SJVRH discriminated against him or any other employee 40 years or older because of their age. Thus, the Court is unable to find that Plaintiff sufficiently pled a prima facie case of age-based discrimination under the ADEA.

         *v.*  *ADEA – Hostile Work Environment*

To assert a hostile work environment claim based on age discrimination, a plaintiff must make a prima facie case by demonstrating that "(1) [he] was subjected to verbal or physical conduct based on age, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment." *Sai. H&R Block Enters., Inc.*, 2010 WL 520633, at *7 (D. Haw. Feb. 11, 2010) (citing *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006); *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1187 (9th Cir. 2005)). When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance. *Faragher*, 524 U.S at 787.

Plaintiff has failed to plead sufficient evidence to support a claim that he suffered "conduct based on age" and that his workplace was "permeated" with hostility sufficiently

1  "severe" or "pervasive" to alter the conditions of his employment. *Sai v. H&R Block Enters., Inc.*,
2  2010 WL 520633, at *7. As discussed above, Plaintiff's interactions with Rudolph did not
3  indicate any sort of discriminatory intent based on a protected class—neither sex nor age. Nor
4  does Plaintiff's experience of being replaced after termination indicate age played a role in his
5  termination. Plaintiff simply offers conclusory statements that there is harassment and hostility in
6  the workplace without giving any facts to support that the hostility stemmed from age-based
7  discrimination on the part of the employer.

8  To bridge the gap between a plausible and an implausible claim, a plaintiff is required to
9  allege how he was aggrieved and what facts or circumstances led him to believe his treatment was
10 *because of* his membership in a protected class. Title VII and the ADEA are not intended to
11 protect the employee from every unfair employment action, but rather from actions motivated by
12 a person's protected status. *See* 42 U.S.C. § 2000e-2(a)(1) (Title VII) ("It shall be an unlawful
13 employment practice for an employer. . . to discharge. . . or otherwise [] discriminate against any
14 individual. . . *because of such individual's race, color, religion, sex or national origin*.")
15 (emphasis added); 29 U.S.C. § 623(a)(1) ("It shall be an unlawful for an employer. . . to
16 discharge. . . or otherwise discriminate against any individual. . . *because of such individual's*
17 *age*.") (emphasis added). Plaintiff has failed to allege on multiple claims how the conduct he
18 suffered was connected to his protected status. In amending his complaint, Plaintiff should take
19 note of these deficiencies.

20 **D.  Conspiracy to Deprive Plaintiff of Gainful Employment**

21 After dismissal of Plaintiff's Title VII and ADEA claims, only Count 4 (conspiracy to
22 deprive Plaintiff of gainful employment) remains. In his complaint, Plaintiff alleges that
23 Jacobson, Rudolph, and Pierce were engaged in a "criminal" conspiracy to "deprive plaintiff of
24 meaningful and gainful employment." (Doc. 1 at ¶ 1.) As this is a civil action, any attempt by
25 Plaintiff to state a claim of a criminal nature against the individual Defendants fails. *See Warfield*
26 *v. United States Air Force*, 859 Fed. Appx. 831, 832 (9th Cir. 2021) (citing *Aldabe v. Aldabe*, 616
27 F.2d 1089, 1092 (9th Cir. 1980) (noting that criminal statutes do not give rise to civil liability)).
28 To the extent Plaintiff intends to state a claim for civil conspiracy under California law, his claim

also fails.

Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994). To state a claim for civil conspiracy, a plaintiff must allege: "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement, and (3) resulting damages." *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 211-12 (2d Dist. 2011).

Plaintiff's general allegations that Jacobson, Rudolph, and Pierce engaged in a coordinated effort against him are insufficient to state a claim for conspiracy. Specifically, Plaintiff fails to provide factual allegations that the individual Defendants entered into an illicit agreement or coordinated amongst each other in any way to either terminate his employment or provide false testimony at his EDD hearing. As evidence of his conspiracy, Plaintiff states that "[Rudolph] has been friends with [Pierce] long before working together at Madera Hospital. I am certain [Rudolph] influenced [Pierce] and [Jacobson]." (Doc. 1 at ¶ 13a.) This statement is merely conclusory and fails to demonstrate "the formation of a group [with] a common plan or design." *City of Industry*, 198 Cal. App. 4th at 211. Plaintiff has insufficiently pled the existence of a conspiracy; therefore, Plaintiff's conspiracy claim against Rudolph, Jacobson, and Pierce is **DISMISSED** for failure to state a claim upon which relief may be granted.

### E. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks

omitted). Accordingly, leave to amend generally should be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

As to Plaintiff's Title VII and ADEA claims against Jacobson, Rudolph, and Pierce in their individual and official capacities, leave to amend would be futile as these claims cannot be cured by amendment. *See Delgado v. Bonta*, 2023 WL 1861402, at *3 (E.D. Cal. Feb. 9, 2023) (dismissing with prejudice plaintiff's Title VII claims against individual defendants); *Miller v. Sacramento City Unified Sch. Dist.*, 2021 WL 4806860, at *6 (E.D. Cal Oct. 14, 2021), report and recommendation adopted, 2021 WL 5165918 (E.D. Cal. Nov. 5, 2021) ("Because plaintiff, as a matter of law, cannot bring claims against [individual defendant] under Title VII, the ADEA. . . all such claims should be dismissed with prejudice."). However, the Court has insufficient information to conclude that amendment would be futile as to Plaintiff's conspiracy claim. It also appears Plaintiff can cure the deficiencies in his Title VII and ADEA claims against remaining Defendants, particularly with respect to exhaustion. *See, e.g.*, *Karim-Panahi*, 839 F.2d at 626 ("When the district court dismisses a pro se Title VII complaint on the ground that plaintiff has failed to allege the receipt of a right-to-sue letter, however, plaintiff must be granted leave to amend the pleading to cure the defect."). Moreover, it does not appear amendment would cause undue delay at this juncture, and there is no evidence Plaintiff acted in bad faith. Thus, leave to amend is appropriate.

Accordingly, to this extent **only**, Plaintiff will be given an opportunity to file an amended complaint that cures the stated defects. *See Lopez*, 203 F.3d at 1127-28; *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff is admonished to provide more than conclusions in his complaint, and provide a short, plain statement of his case, including facts that support his allegations. *See* Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678-79. Although accepted as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . ." *Twombly*, 550 U.S. at 555 (citations omitted). Plaintiff is advised the Court cannot refer to a prior pleading in order to make his amended complaint complete. As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).

Thus, once Plaintiff files an amended complaint, the original pleading no longer serves any function in this action.

Plaintiff may file an amended complaint within thirty days of the date of this order, but any such amended complaint must comport with the legal standards set forth above. The amended complaint must also bear the docket number assigned this case and must be labeled "First Amended Complaint." Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981). Failure to file an amended complaint may result in dismissal of the action in its entirety. *See* L. R. 110.

### IV.   Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Defendants' motion to dismiss (Doc. 21) is **GRANTED**.
2. Plaintiff's Title VII and ADEA claims against individual Defendants Jacobson, Rudolph, and Pierce are **DISMISSED without leave to amend**.
3. Plaintiff's conspiracy claim brought against all Defendants and Title VII and ADEA claims against SJVRH and Vibra **only** are **DISMISSED** with leave to amend.

Plaintiff **SHALL** file any First Amended Complaint within **thirty** days of the date of service of this order. **If Plaintiff fails to file an amended complaint, the action may be dismissed without prejudice and without further notice for failure to prosecute and failure to obey the Court's order pursuant to Local Rule 110.**

IT IS SO ORDERED.

Dated:   **July 13, 2023**

_Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE